UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:16-CV-80455-ROSENBERG/HOPKINS

REBECCA KARLEE HABERSKI,

    Plaintiff,

v.

ANDREA BUFANO, individually, &
WILLIAM HERNANDEZ, individually,

    Defendants.
_____/

**ORDER GRANTING DEFENDANT HERNANDEZ'S MOTION
FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING
IN PART DEFENDANT BUFANO'S MOTION FOR SUMMARY JUDGMENT**

    This matter is before the Court on Defendant Hernandez's Motion for Summary Judgment [DE 78] and Defendant Bufano's Motion for Summary Judgment [DE 86]. Both motions have been fully briefed. For the reasons set forth below, Defendant Hernandez's Motion for Summary Judgment is granted and Defendant Bufano's Motion for Summary Judgment is granted in part and denied in part.

    This is a case about an arrest. Plaintiff, a former FAU student, was involved in a dispute with other FAU students at an FAU football game. After law enforcement intervened in that dispute, Plaintiff was arrested. During the course of her arrest, Plaintiff's arm was broken by law enforcement. As a result of that injury, Plaintiff brought the instant suit against her arresting officers. The motions before the Court require the Court to rule on two competing principles. The first such principle is that when a dispute of material fact exists, a jury—not the Court—must resolve that dispute. There are many disputes of fact in this case, although not all of them are

material. The second competing principle is that law enforcement officers are immune from suit (and from jury trials) via qualified immunity when an officer arguably has a justification for the actions he or she has undertaken.

The Court has closely reviewed the record in this case to determine what disputes of fact would not preclude the Court from deciding certain qualified immunity matters on summary judgment and what disputes of fact are so critical that a jury, not the Court, must decide those questions at trial. Upon review, the Court concludes for the reasons set forth below that a portion of Plaintiff's claims may proceed against one of her arresting officers, Defendant Bufano, but Plaintiff's claims fail as a matter of law against the other arresting officer, Defendant Hernandez.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247-48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247-48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting

evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "[t]he non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, to show that a reasonable jury could find in favor of that party. *See Shiver*, 549 F.3d at 1343.

## II.     BACKGROUND AND INTRODUCTION

The Court sets forth below some of the undisputed facts in this case for background purposes. Disputed facts germane to the Court's decision are discussed in the Court's analysis section, *infra*.

Plaintiff was an FAU student at an FAU football game tailgate party. DE 99-5 at 30, 74-77. At that party, Plaintiff spoke to her boyfriend about a personal matter. *Id.* at 74-77. Plaintiff and her boyfriend were unable to resolve the matter and, as the conversation ensued, other persons present (friends of Plaintiff's boyfriend) began to push Plaintiff. *Id.* at 80-82. FAU campus police officers intervened. *Id.* at 91. All persons involved in the aforementioned dispute, except for

3

Plaintiff, were ordered by FAU officers to leave the area. *Id.* Those individuals complied. *Id.* at 94.

Soon thereafter, Plaintiff also attempted to leave. *Id.* Defendant Hernandez then ordered Plaintiff not to leave without his permission. *Id.* Although the parties dispute much of what occurred after Defendant Hernandez's order, the parties do not dispute that Plaintiff made physical contact with Defendant Hernandez. *Id.* at 97. After that physical contact, Defendant Bufano and Defendant Hernandez took Plaintiff's arms and began to escort her to a different area. *Id.* at 98. During that escort, Plaintiff's arm was broken. *Id.* at 106.

As a result of her injury, Plaintiff filed the instant suit. Plaintiff's operative complaint, her Second Amended Complaint, contains six counts: False Arrest under Federal Law (Count I against Defendants Hernandez and Bufano), False Arrest under State Law (Count II against Defendants Hernandez and Bufano), Excessive Force under Federal Law (Count III against Defendant Bufano), Excessive Force under State Law (Count IV against Defendant Bufano), Infliction of Emotional Distress (Count V against Defendant Bufano), and Vicarious Supervisory Liability (Count VI against Defendant Bufano). Defendants moved for summary judgment as to each count brought against them, raising qualified immunity as their primary defense.[1] For the reasons set forth below, Defendant Hernandez is entitled to summary judgment as to Count I and Count II, and Defendant Bufano is entitled to summary judgment as to Count I and Count II. Count VI is dismissed as moot. There are no remaining counts as to Defendant Hernandez. All other counts (Counts III, IV, and V as to Defendant Bufano) survive summary judgment.

---

1 Defendant Bufano also raised certain legal defenses against Plaintiff's Count V, discussed below.

4

### III.     ANALYSIS

The Court addresses Defendants' Motions for Summary Judgment count-by-count, and each count is considered in turn.

### FALSE ARREST UNDER FEDERAL LAW AGAINST HERNANDEZ, COUNT I

Plaintiff's first count for false arrest is brought under 42 U.S.C. § 1983. Defendant Hernandez argues he is entitled to qualified immunity against Plaintiff's claim. "Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002). The purpose of qualified immunity is to allow officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987), while "protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee*, 284 F.3d at 1194 (internal citation and quotation marks omitted). "[T]o receive qualified immunity, an official must first establish that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (quoting *Lee*, 284 F.3d at 1194). "If the official was acting within the scope of his discretionary authority the burden then shifts to the plaintiff to show that the grant of qualified immunity is inappropriate." *Id.*

With respect to the first prong of qualified immunity, whether a defendant was acting within the scope of his or her discretionary authority, even actions at the "outer perimeter of an official's discretionary duties" qualifies for immunity. *Habert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (quoting *Doe v. McMillan*, 412 U.S. 306, 319-20 (1973)). Here, Plaintiff

concedes that: (1) Defendants were acting in this case as law enforcement officers, (2) Defendants were on duty in a busy, loud, boisterous environment, (3) Plaintiff was involved in an incident that involved multiple males repeatedly pushing her, despite her requests for them to stop pushing her, and (4) Defendants' actions in this case were undertaken after that incident.  *See* DE 102-5 at 75-110.  Based upon these undisputed facts, the Court concludes that both Defendants were, at a minimum, within the "outer perimeter" of their discretionary duties.  Each was acting as a law enforcement officer and each was discharging his duty to protect the public at the time of the events of this case.

Because the Court concludes that Defendants were acting within the scope of their discretionary authority, the burden shifts to Plaintiff to show that the second prong of qualified immunity is not met in this case.  *Lee*, 284 F.3d at 1194.  That prong requires Plaintiff to show that a Defendant violated a constitutional right and that the right was clearly established at the time of violation.  *Id.*  Plaintiff argues that there is a question of fact for a jury to decide whether Defendant Hernandez's order to Plaintiff (that she was not free to leave his presence without his permission) was unlawful.  If a jury were to find that this command was unlawful, Plaintiff argues, that command would have violated clearly established law that a law enforcement officer may not detain an individual without a founded suspicion of criminal activity.  *See Carter v. State*, 454 So. 2d 739, 741(Fla. Dist. Ct. App. 1984).

The following key facts are undisputed on this issue.  Plaintiff had a conversation with her boyfriend at a football tailgate party.  *See* DE 102-5 at 83-86.  During the course of that conversation, three of Plaintiff's boyfriend's friends began to push her.  *Id.* at 86.  Plaintiff raised her voice, asking the three boys to stop pushing her, and Plaintiff did not consent to being touched.

6

*Id.* at 86-87.  Plaintiff described the pushing as "no joke."  *Id.* at 88.  Although an FAU officer observed the pushing, that officer left the scene.  *Id.* at 89.  After that officer left the scene, the pushing continued, with the boys telling Plaintiff in raised voices for Plaintiff to "go away" and "just leave."  *Id.*  At this point, four law enforcement officers (not including the officer who initially observed the incident) intervened.  Those four FAU officers told the boys to leave and kept Plaintiff with them, as Plaintiff describes it, to keep her safe.  *Id.* at 89-93.  Although Plaintiff avers that she was then told she was free to go by one unidentified officer, Defendant Hernandez (one of the four officers to intervene) told her that she was not free to go without his permission.  *See id.* at 89-96.  After that order, Plaintiff made physical contact with Defendant Hernandez.  *Id.* at 97.  Plaintiff characterizes the physical contact as inadvertent.  *See id.*  After Plaintiff made physical contact with Defendant Hernandez, Defendant Bufano, who had observed these events nearby, seized Plaintiff's arm.  *Id.* at 98.

In light of these facts, the viability of Plaintiff's false arrest claim turns on the question of whether Defendant Hernandez's order—that she was not permitted to leave without his permission—was lawful.  The parties disagree over whether Defendant Hernandez's interactions with Plaintiff amounted to a non-intrusive, brief stop (which does not trigger Fourth Amendment protections), or an investigatory stop or a detention, which does trigger Fourth Amendment protections.  Ultimately, the Court deems it unnecessary to resolve this dispute because even if Plaintiff was entitled to greater Fourth Amendment protections because she was detained, her false arrest claim still must fail as a matter of law because Defendant Hernandez had an arguable justification for his actions as more fully discussed below.  For the purposes of the Court's

7

analysis, then, the Court assumes *arguendo* that Defendant Hernandez's decision not to permit Plaintiff to leave his presence without his permission amounted to Plaintiff's detention.

A detention qualifies as an investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968). *See Carter*, 454 So. 2d at 741. An investigatory stop is lawful if an officer possesses a "founded suspicion" of an individual's criminal activity. *Id.* The founded suspicion of criminal activity may be for activity that was in the past, is in the present, or will be in the future. *See id.* A founded suspicion arises if the circumstances observed by the officer, interpreted in the light of the officer's knowledge, reasonably indicate the possible presence of criminal activity. *Id.* Conversely, a bare suspicion of criminal activity does not qualify as a founded suspicion. *Id.*

The Court must therefore determine whether Defendant Hernandez had a founded suspicion of criminal activity. In considering this question, the Court is guided by the standards that govern qualified immunity. Officers are faced with split-second decisions which are often uncertain and rapidly evolving. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). Qualified immunity applies when an officer has "arguable" justification for the law enforcement action taken. *See Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2011). Here, the only reasonable inference from the evidence before the Court is that Defendant Hernandez viewed the interactions between Plaintiff, her boyfriend, and her boyfriend's friends. He observed raised voices. He observed pushing—lots of pushing. Under Florida law, a criminal battery is defined as an actual and intentional act that touches or strikes another person against the will of the other. Fla. Stat. § 784.03.

The Court concludes the following. First, Defendant Hernandez "arguably" observed a crime—the unconsented-to pushing of Plaintiff. Second, Defendant Hernandez arguably had

8

cause to suspect that another crime could occur in the future; he could have feared another battery would occur on Plaintiff if she left his presence too soon or, alternatively, he could have feared that Plaintiff would retaliate against her aggressors for what had just happened. Under either theory, Defendant Hernandez was authorized to order Plaintiff to remain in his presence and to temporarily detain her as he had a founded suspicion of criminal activity. This case is distinguishable from cases such as *Carter v. State*, where non-criminal activity was observed and found to not amount to a founded suspicion of criminal activity. 454 So. 2d 739 (Fla. Dist. Ct. App. 1984). The criminal activity in this case occurred before the eyes of law enforcement, as Plaintiff concedes in her deposition. Law enforcement did not have to make a large logical leap, based upon the facts of this case, that there was a danger of further criminal activity if Plaintiff was permitted to rejoin those with whom she had just had an altercation. Defendant Hernandez's actions were not a result of "random selection, mere guesswork, or a hunch." *Id.* at 741. The facts supporting a founded suspicion of criminal activity unraveled before his eyes.

For all of the foregoing reasons, Defendant Hernandez issued a lawful order to Plaintiff when he detained her and told her that she was not free to leave until he said that she could leave. The fact that other officers on the scene may have elected to exercise their discretion differently (by permitting Plaintiff to leave) is not relevant to the inquiry before the Court—the relevant inquiry is whether Defendant Hernandez had a founded suspicion of criminal activity.

Having concluded that Defendant Hernandez's order of detention was lawful, the Court turns to the facts of this case that occurred after that order was given but prior to Plaintiff's arrest. Plaintiff concedes that she moved away from Defendant Hernandez after she was ordered not to leave: "And then I went to go step around him again to leave, and then he, like, blocked my path."

9

DE 102-5 at 97. Plaintiff concedes that, in so moving, she made physical contact with Defendant Hernandez: "And, like, as I was stepping, I walked into him . . . . I ran into him." *Id.* at 97-98. At the point in time Plaintiff disobeyed a lawful order of Defendant Hernandez, he had more than arguable probable cause to arrest her—he had actual probable cause. *See C.E.L. v. State*, 24 So. 3d 1181, 1185-86 (Fla. 2009). Similarly, at the point in time Plaintiff made physical contact with Defendant Hernandez in contravention of a lawful order, he had probable cause to arrest her for battery on a law enforcement officer. *See id.*; *see also* Fla. Stat. § 784.07. While Plaintiff characterizes her touching of Defendant Hernandez as an accident, that characterization is not germane to a qualified immunity determination on the facts of this case. The operative question is whether a law enforcement officer would arguably conclude that probable cause existed for an arrest in light of the fact that Plaintiff had disobeyed a lawful order and, in the very same act, made physical contact with the officer. The Court concludes that actual—not arguable—probable cause supported Defendant's Hernandez's arrest of Plaintiff. For all of the foregoing reasons, Defendant Hernandez is entitled to qualified immunity as to Plaintiff's claim for false arrest, Count I because (1) he lawfully detained Plaintiff, (2) Plaintiff violated Defendant Hernandez's lawful order detaining her, and (3) as a result of the foregoing, Defendant Hernandez had probable cause to arrest Plaintiff. Defendant Hernandez's Motion for Summary Judgment is therefore granted as to Count I.

**FALSE ARREST UNDER FEDERAL LAW AGAINST BUFANO, COUNT I**

The Court turns now to Defendant Bufano. Defendant Bufano did not involve himself in this case until *after* Plaintiff had disobeyed a lawful order of Defendant Hernandez and *after* Plaintiff had made physical contact with Defendant Hernandez. Defendant Bufano's testimony is

10

that he observed the foregoing closely enough to hear Plaintiff's words: "I observed . . . [Plaintiff] using profanities towards [Defendant Hernandez]." DE 99-2 at 1. Defendant Bufano also testifies that he observed Plaintiff make physical contact with Defendant Hernandez: "I observed . . . [Plaintiff] 'chest bumping' [Defendant] Hernandez.'") *Id.* Plaintiff admits that she has no knowledge of what Defendant Bufano observed: "Q: Where was Bufano directly before [he seized Plaintiff], to your knowledge? A: I had never saw him before that." DE 99-5 at 99. Plaintiff also appears to concede—and does not rebut—that Defendant Bufano observed the events leading up to her detention. *See* DE 101 at 2-3 ("[I]t is undisputed that [Defendant Bufano] was present and close enough to have observed and heard that [Plaintiff] was directed to leave on two occasions.").

As a result of the foregoing, the Court concludes that Defendant Bufano observed Plaintiff's disobedience and physical contact and, for all of the reasons set forth above, probable cause existed for Plaintiff's arrest for battery on a law enforcement officer and for disobeying a lawful order in the course of an officer's investigation. The Court therefore concludes that Defendant Bufano had probable cause to arrest Plaintiff and Defendant Bufano is entitled to qualified immunity for his involvement with the arrest for the same reasons Defendant Hernandez is entitled to qualified immunity. Thus, Defendant Bufano's Motion for Summary Judgment is granted as to Count I.

**<u>FALSE ARREST UNDER STATE LAW AGAINST HERNANDEZ AND BUFANO, COUNT II</u>**

In addition to bringing a false arrest claim against Defendant Hernandez and Defendant Bufano under federal law, Plaintiff has also brought a claim for false arrest against both Defendants under Florida law. Such a claim may only be brought under Florida law if Defendants arrested Plaintiff "in bad faith or with malicious purpose or in a manner exhibiting wanton and

11

willful disregard of human rights, safety, or property." Fla. Stat. § 768.29(9)(a). For all of the reasons the Court concludes that Defendants are entitled to qualified immunity as to Plaintiff's arrest, the record evidence in this case does not support the conclusion that, with respect to Plaintiff's arrest, Defendants acted in bad faith, with malicious purpose, or with a willful disregard of human rights. As a result, Defendant Hernandez and Defendant Bufano are entitled to summary judgment as to Count II and their respective Motions for Summary Judgment are granted as to that count.

**EXCESSIVE FORCE UNDER FEDERAL LAW AGAINST BUFANO, COUNT III**

Plaintiff's third count is a claim that Defendant Bufano utilized excessive force against her. Defendant Bufano argues that he is entitled to qualified immunity as to this count because his use of force against Plaintiff was reasonable and because the injury she ultimately received "was a freak accident." *See* DE 120-1 at 10. An excessive force claim relates to the manner in which an arrest was carried out,[3] and is independent of whether law enforcement had the power to arrest. *See Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). An excessive force claim is governed by an objective reasonableness standard, and several factors are instructive in determining whether an officer's use of force was objectively reasonable: (1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted, and (4) whether the force was applied in good faith or maliciously and sadistically. *Id.*

---

3 Although Defendant Bufano briefly argues that Defendant Hernandez arrested Plaintiff—not him—the Court concludes that, viewing all facts in the record in the light most favorable to Plaintiff, a jury could conclude that Plaintiff was arrested by both Defendant Hernandez and Defendant Bufano as both officers participated in the seizure of Plaintiff's arms, the escorting of Plaintiff to a different area, the placement of Plaintiff on the ground, and the attachment of handcuffs to Plaintiff. *See generally* DE 102. Notably, Defendant Bufano was the first to seize Plaintiff. *See* DE 99-5 at 100-10.

Here, viewing all inferences in the record in the light most favorable to Plaintiff, Plaintiff's testimony is that her response to her arrest was passive; while she may have been agitated by her arrest, she did not physically resist and she did not yell at law enforcement. DE 102-5 at 123 ("Q: Were you ever trying to pull away from the officers?  A: No."); *see generally* DE 99-5 at 100-11. Plaintiff's passivity is supported by the sworn statement of Defendant Hernandez:

> I attempted to escort Haberski away from the rest of the crowd and continue to calm her down and to give the black male time to leave the area.   Haberski was compliant and didn't resist our efforts to escort her from the area.

DE 99-1 at 2.  Defendant Bufano's account of events is essentially the opposite:

> While we were attempting to escort Haberski out of the parking lot which was filled by a very large crowd, Haberski continued to resist by forcefully attempting to pull her arm away from me in an attempt to break free.

DE 99-2 at 2.[4]  During the course of Plaintiff's arrest, her arm was broken:

> [Bufano] had my left arm and Hernandez had my right arm.  And we were walking, and he had my arm pretty tight.  And I told him, like, can you, like, loosen up; you are hurting me.  And he didn't.  And then we were on, like, pavement, and we were walking towards the grass and the curb.  And as soon as we stepped up, like, pretty much as soon as we stepped on the curb is when my arm broke.  Like, he snapped my arm.  And I just remember being on the ground screaming.

DE 99-5 at 105-06.  The Court applies these facts to the four objective factors governing excessive force claims:

The need for the application of force.  Based upon the *undisputed* facts of this case, the Court concludes that there was a need in this case for some, albeit small, amount of force to remove Plaintiff from a crowded, noisy area in which she had just been involved in an altercation and had just disobeyed a lawful order.  *See*, *e.g.*, *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir.

---

4 Although Plaintiff has attached real-time photographs of her arrest, the Court cannot ascertain whether Plaintiff's disposition and actions in those photographs are a result of her eventual injury or a result of her reaction to arrest prior to the injury.  *See* DE 99-8 through 99-36.

13

1997) (noting that *some* amount of force may be applied to even a passive, non-resisting suspect). Whether Plaintiff's behavior after arrest resulted in a greater need for force—greater than the force required to secure a passive suspect—is a factual question very much in dispute by the parties, and cannot be decided by this Court on summary judgment.

The extent of the injury inflicted. Plaintiff's broken arm required treatment by paramedics at the scene and subsequent treatment at a hospital. Plaintiff has submitted a letter by an orthopedist indicating that Plaintiff's type of injury is typically "sustained[ed] . . . from high energy injuries such as motor vehicle collisions or falls from an elevated height of greater than 10 feet." DE 99-6. Plaintiff's injury required surgery. *Id.* at 23. Plaintiff's injury required physical rehabilitation. *Id.*

The relationship between the need for force and the amount of force. While the Court has concluded that, based upon Plaintiff's undisputed testimony, a small amount of force was necessary to escort Plaintiff, the amount of force used against Plaintiff was significant. The application of force on Plaintiff, who was known by Defendant Hernandez and others officers on the scene to be pregnant,[5] was sufficiently great to break her arm, require surgery, and require physical rehabilitation. If Plaintiff was passive, a disputed fact, there may be a disparity between the amount of force used on Plaintiff and the amount of force Plaintiff's version of events would suggest was warranted. As a result of the disparity, this factor weighs in favor of submitting this claim to a finder of fact for a determination as to the amount of force actually required. *See Smith*, 127 F.3d at 1418.

Whether the force was applied in good faith or maliciously. While the Court is unaware of any direct evidence in the record to support the contention that Defendant Bufano acted in bad

---

5 DE 99-5 at 91.

14

faith or acted maliciously in his exercise of force, if Plaintiff's testimony were to be entirely credited by a jury, bad faith or maliciousness by Defendant Bufano could be inferred. *See* page 18, *infra*.

Courts must look "at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily harm to the suspect against the gravity of the threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009). The use of gratuitous force against a suspect who is not resisting arrest constitutes excessive force. *Hadley*, 526 F.3d at 1330. Cases in which qualified immunity did not bar a claim for excessive force include an officer punching a non-resisting suspect in the stomach[6] and an officer slamming a non-resisting suspect's head against the hood of a car.[7] To be sure, both of the foregoing cases involved facts more extreme than the instant case, but courts have denied qualified immunity[8] for cases involving facts more closely resembling the case at bar. For example, in *Smith v. Mattox*, 127 F.3d 1416, 1418 (11th Cir. 1997), a suspect threatened law enforcement with a baseball bat, and then fled. When the suspect was quickly confronted by law enforcement a second time:

> [The suspect] docilely submitted to arrest upon [the officer's] request for him to "get down." Once [the suspect] was on the ground, [the officer] put his knee on [the suspect's] lower back to prepare to handcuff him. In the process of pulling [the suspect's] left arm behind his back to fasten the handcuffs, [the officer] put [the suspect's] forearm to a position that caused [the suspect] discomfort. [The suspect] complained, and then with a grunt and a blow—but no sign of anger—[the officer]

---

6 *Hadley v. Gutierrez*, 526 F.3d 1324 (11th Cir. 2008).
7 *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002).
8 Defendant Bufano's actions do not qualify for qualified immunity, if a jury were to credit Plaintiff's version of events, because (i) under *Smith*, his use of force would have violated established case law or (ii) just as in *Smith*, his use of force fell into the category of cases in which the unlawfulness of the conduct is readily apparent even without clarifying case law.

15

>  broke [the suspect's] arm. [The suspect] was then taken to the hospital and underwent surgery on his arm for multiple fractures.

*Id.*  The *Smith* case presented a close question for the appellate court; even though law enforcement in *Smith* had a greater reason than the instant case to use force—the suspect had threatened the officer with a weapon and fled—the appellate court affirmed a denial of summary judgment which in turn denied the officer qualified immunity.  The critical fact before the court in *Smith* was that the suspect had (for the purposes of summary judgment) offered no resistance *at all*, juxtaposed to the seriousness of the injury.  *See id.* at 1420.  The same conclusion is warranted in the instant case.  The four factors governing excessive force cases outlined above weigh in favor of denying summary judgment, particularly when the Court weighs those factors in the light of cases such as *Smith*.  If Plaintiff's testimony and Defendant Hernandez's sworn statement are credited, Plaintiff was passive, posed no safety risk to others, and posed no risk of flight.  That passivity, juxtaposed to the seriousness of her injury (which required surgery and physical rehabilitation, just as in *Smith*) and the force necessary to cause that injury, means that the issue of qualified immunity must be submitted to the jury, just as it was in *Smith*.  *See also Jennings v. Jones*, 499 F.3d 2 (1st Cir. 2007) (officer not entitled to qualified immunity when force against suspect was increased, breaking a bone, *after* the suspect's submission and complaint of pain).  The Court therefore denies Defendant Bufano's Motion for Summary Judgment as to Count III.

## **EXCESSIVE FORCE UNDER STATE LAW LAW AGAINST BUFANO, COUNT IV**

Plaintiff's fourth count is a state law claim for assault and battery against Defendant Bufano.  Both Plaintiff and Defendant Bufano's arguments on this count mirror their respective arguments for Count III.  Under Florida law, a "battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." *City of*

16

*Miami v. Sanders,* 672 So. 2d 46, 47 (Fla. Dist. Ct. App. 1996). "Law enforcement officers are provided a complete defense to an excessive use of force claim where an officer 'reasonably believes [the force] to be necessary to defend himself or another from bodily harm while making the arrest.'" *Id.* (quoting Fla. Stat. § 776.05(1)(1995)). "[A] presumption of good faith attaches to an officer's use of force in making a lawful arrest and an officer is liable for damages only where the force used is clearly excessive." *Id.* The question of whether an amount of force was reasonably necessary may be submitted to a jury. *See Ansley v. Heinrich*, 925 F.2d 1339, 1343 (11th Cir. 1991). Here, for all of the reasons set forth above under Count III, the Court concludes that a jury must determine whether the force used by Defendant Bufano was reasonable in light of the possibility that a jury could find Plaintiff was entirely passive, juxtaposed to the force that was used against her that was sufficient enough in intensity to break her arm. The Court therefore denies Defendant Bufano's Motion for Summary Judgment as to Count IV.

**INFLICTION OF EMOTIONAL DISTRESS AGAINST BUFANO, COUNT V**

Plaintiff's fifth count is brought against Defendant Bufano and is labeled "Infliction of Emotional Distress." DE 75 at 14. Plaintiff has clarified that it is her intention for this count to include both negligent infliction of emotional distress and intentional infliction of emotional distress. DE 100 at 14. Florida law bars suits against law enforcement officers in their individual capacities outside of a special exception:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, **unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property**.

17

Fla. Stat. § 768.28(9)(a) (emphasis added). Thus, because of the mental requirement imposed by section 768.28(9)(a), to the extent Plaintiff intended Count V to be a claim for negligent infliction of emotional distress, her claim is barred. *Id.*; *see Bryant v. Duval Cnty. Hosp. Authority*, 459 So. 2d 1154, 1155 (Fla. Dist. Ct. App. 1984) ("Section 768.28(9)(a) provides that no employee of the state or its subdivisions is personally liable in tort for ordinary negligence in the scope of his employment.").

Plaintiff has clarified, however, that it also is her intention to bring a claim for intentional infliction of emotional distress. A claim for intentional infliction of emotional distress requires that a defendant "by extreme and outrageous conduct intentionally or recklessly cause[d] severe emotional distress to another." *Williams v. City of Minneola*, 575 So. 2d 683, 690 (Fla. Dist. Ct. App. 1991) (citing *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277 (Fla. 1985)). As to this claim, the Court construes Defendant Bufano's argument to be that the facts of this case do not rise to the requisite level of extreme and outrageous conduct "beyond the bounds of decency." *See Williams*, 575 So. 2d at 691. But, the Court is required to view all facts in the record in the light most favorable to the Plaintiff. Viewed in this light and based upon the limited argument devoted to this count, the Court concludes that if Plaintiff's version of the events is entirely credited, a jury could find that Defendant Bufano's actions amounted to outrageous conduct "beyond the bounds of decency." Plaintiff's version of the events goes far beyond her contention that she was passive during her arrest. She asserts that she was peaceful and cooperative before her arrest, before her detainment, and during conversations she had with other officers on the scene who told her that she was free to leave and under no suspicion whatsoever.[10] These contentions must be weighed

---

10 *See* DE 102-5 at 70-95.

18

against the injury she received; accordingly, Plaintiff's record evidence is sufficient to rebut Defendant Bufano's limited argument as to this count.

Furthermore, there is no legal bar to the maintenance of a claim for intentional infliction of emotional distress in conjunction with a claim for excessive force. *See Madura v. North Miami Beach*, 517 F. App'x 847 (11th Cir. 2013) (vacating summary judgment granting qualified immunity on an excessive force claim and vacating a directed verdict on an intentional infliction of emotional distress claim in a case where the plaintiff and defendant had stark differences on the circumstances of an arrest). Indeed, the reckless requirement of an emotional distress claim "is the equivalent of willful and wanton conduct" in section 768.28(9)(a) which permits claims for excessive force against law enforcement officers. *Yex v. Daytona Beach*, No. 6:14-cv-764, 2015 WL 868073 (M.D. Fla. Mar. 2, 2015) (citing *Coulson v. City of Hialeah*, No. 09-cv-22911, 2010 WL 326053 (S.D. Fla. Jan. 21, 2010)). For all of the foregoing reasons, Plaintiff's Count V survives as to intentional infliction of emotional distress and Defendant Bufano's Motion for Summary Judgment is granted in part (as to negligent infliction of emotional distress) and denied in part (as to intentional infliction of emotional distress).

## SUPERVISORY LIABILITY AGAINST BUFANO, COUNT VI

Plaintiff's sixth count seeks to impose supervisory liability on Defendant Bufano for Defendant Hernandez's actions. As an initial matter, the Court is unable to locate evidence in the record (and Plaintiff cites to no such evidence) that Defendant Bufano is, as a matter of fact, Defendant Hernandez's *actual* supervisor, Plaintiff's subjective belief on this issue notwithstanding.[11] Nonetheless, there is no liability in this case to impose on Defendant Bufano as

---

11 The Defendants work for completely separate entities. Defendant Hernandez is a Florida Atlantic University police officer. Defendant Bufano is a deputy sheriff.

19

a result of Defendant Hernandez's actions.  Summary judgment has been granted entirely in Defendant Hernandez's favor, *supra*.  As a result, Plaintiff's Count VI has become moot and it is hereby dismissed without prejudice for that reason.

### IV.  CONCLUSION

It is therefore **ORDERED AND ADJUDGED** that:

1. Defendant Hernandez's Motion for Summary Judgment [DE 78] is **GRANTED** and summary judgment is entered in Defendant Hernandez's favor as to Count I and Count II.

2. Defendant Bufano's Motion for Summary Judgment [DE 86] is **GRANTED** as to Count I and Count II, **GRANTED IN PART AND DENIED IN PART** as to Count V, and **DENIED** as to Count III and Count IV.

3. Plaintiff's Count VI is **DISMISSED AS MOOT**.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 17th day of February, 2017.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record